UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No.:

## CIVIL ACTION COMPLAINT

| | |
|---|---|
| Larry Winslowe Lee and Susan Provost Lee, | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| AK STEEL CORP. (sued Individually and as successor-by-merger to AK STEEL HOLDING CORP. and as successor-in-interest to ARMCO STEEL CO., LP and as successor-in-interest to ARMCO, INC. f/k/a ARMCO STEEL CORPORATION); | : |
| BRIGGS & STRATTON CORPORATION d/b/a SNAPPER; | : |
| CERTAINTEED CORPORATION; | : |
| CLOW VALVE COMPANY; | : |
| DANA COMPANIES LLC (sued Individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY); | : |
| DEERE & COMPANY d/b/a JOHN DEERE; | : |
| ECKLER'S CORVETTE; | : |
| FORD MOTOR COMPANY; | : |
| FORMOSA PLASTICS CORPORATION U.S.A (sued Individually and as parent, alter ego and successor-in-interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION); | : |
| GENUINE PARTS COMPANY d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (aka NAPA); | : |
| GRINNELL LLC d/b/a GRINNELL CORPORATION; | : |
| HAJOCA CORPORATION (sued Individually and as successor-in-interest to HUGHES SUPPLY); | : |
| HAMMER & STEEL, INC.; | : |
| HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued Individually and as successor-in-interest to BENDIX CORPORATION); | : |
| J-M MANUFACTURING COMPANY, INC. (sued Individually and as parent and alter ego to J-M A/C PIPE CORPORATION); | : |
| KAWASAKI MOTORS CORP. U.S.A.; | : |

**JURY TRIAL DEMANDED**

1

MCWANE INC. (sued Individually and as successor-in-    :
   interest to CLOW CORPORATION);    :
METROPOLITAN LIFE INSURANCE COMPANY;    :
PFIZER INC.;    :
PNEUMO ABEX LLC (sued Individually and as    :
   successor-in-interest to ABEX CORPORATION and as    :
   successor-in-interest to AMERICAN BRAKEBLOK);    :
SPECIAL ELECTRIC COMPANY, INC. (sued    :
   Individually and as alter-ego and successor-in-interest to    :
   SPECIAL MATERIALS, INC.-WISCONSIN);    :
UNION CARBIDE CORPORATION;    :
YAMAHA MOTOR CORPORATION, U.S.A.;    :
  :
  :
                  Defendants.    :

## CIVIL ACTION COMPLAINT

Plaintiff Larry Winslowe Lee and Susan Provost Lee sue the above-named Defendants for compensatory and punitive damages and allege as follows:

### PARTIES

1.    Plaintiffs Larry Winslowe Lee and Susan Provost Lee are citizens and residents of the County of Wake, State of North Carolina.

2.    Defendant, AK STEEL CORP. (sued individually and as successor-by-merger to AK STEEL HOLDING CORP. and as successor-in-interest to ARMCO STEEL CO., LP and as successor-in-interest to ARMCO, INC. f/k/a ARMCO STEEL CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Ohio. At all times material hereto, AK STEEL CORP. (sued individually and as successor-by-merger to AK STEEL HOLDING CORP. and as successor-in-interest to ARMCO STEEL CO., LP and as successor-in-interest to ARMCO, INC. f/k/a ARMCO STEEL CORPORATION) was a manufacturer of Armco asbestos-containing pipe. AK STEEL CORP. (sued individually and as successor-by-merger to AK STEEL HOLDING CORP. and as successor-in-interest to ARMCO

2

STEEL CO., LP and as successor-in-interest to ARMCO, INC. f/k/a ARMCO STEEL CORPORATION) has and does business in the State of North Carolina.

3.     Defendant, BRIGGS & STRATTON CORPORATION d/b/a SNAPPER, was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin. At all times material hereto, BRIGGS & STRATTON CORPORATION d/b/a SNAPPER was a manufacturer of Snapper lawn mowers. BRIGGS & STRATTON CORPORATION d/b/a SNAPPER has and does business in the State of North Carolina.

4.     Defendant, CERTAINTEED CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, CERTAINTEED CORPORATION was a manufacturer of transite pipe. CERTAINTEED CORPORATION has and does business in the State of North Carolina.

5.     Defendant, CLOW VALVE COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Iowa. At all times material hereto, CLOW VALVE COMPANY was a manufacturer of Clow valves. CLOW VALVE COMPANY has and does business in the State of North Carolina.

6.     Defendant, DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY), was and is a company incorporated under the laws of the State of Virginia with its principal place of business in Ohio. The members of the "LLC" who comprise DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) are: Michael J. Debacker who resides in Maumee, Ohio, and Bricy Stringham who resides in Perrysburg, Ohio. At all times material hereto, DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) developed, manufactured,

3

marketed, distributed and/or sold asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing Victor Gaskets. DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) has and does business in the State of North Carolina.

7. Defendant, DEERE & COMPANY d/b/a JOHN DEERE, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois. At all times material hereto, DEERE & COMPANY d/b/a JOHN DEERE was a manufacturer of John Deer tractors. DEERE & COMPANY d/b/a JOHN DEERE has and does business in the State of North Carolina.

8. Defendant, ECKLER'S CORVETTE, was and is a company incorporated under the laws of the State of Florida with its principal place of business in Florida. At all times material hereto, ECKLER'S CORVETTE was a supplier of asbestos-containing friction products. ECKLER'S CORVETTE has and does business in the State of North Carolina.

9. Defendant, FORD MOTOR COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. At all times material hereto, FORD MOTOR COMPANY was a manufacturer of asbestos containing friction products. FORD MOTOR COMPANY specifically designed its braking systems for asbestos-containing brake linings such that no other material could be utilized as brake linings in those systems. FORD MOTOR COMPANY has and does business in the State of North Carolina.

10. Defendant, FORMOSA PLASTICS CORPORATION U.S.A (sued Individually and as parent, alter ego and successor-in-interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, FORMOSA PLASTICS CORPORATION U.S.A (sued Individually and as parent, alter ego and successor-in-

4

interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION) was a manufacturer and supplier of asbestos-containing transite pipe. FORMOSA PLASTICS CORPORATION U.S.A (sued Individually and as parent, alter ego and successor-in-interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION) has and does business in the State of North Carolina.

11.     Defendant, GENUINE PARTS COMPANY d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (aka NAPA), was and is a company incorporated under the laws of the State of Georgia with its principal place of business in Georgia. At all times material hereto, GENUINE PARTS COMPANY d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (aka NAPA) was a manufacturer and supplier of Rayloc brakes. GENUINE PARTS COMPANY d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (aka NAPA) has and does business in the State of North Carolina.

12.     Defendant, GRINNELL, LLC d/b/a GRINNELL CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida.  The sole member of the "LLC" that comprises GRINNELL, LLC d/b/a GRINNELL CORPORATION is Tyco International Management Control, a resident of Princeton, New Jersey. At all times material hereto, GRINNELL, LLC d/b/a GRINNELL CORPORATION was a supplier of Johns Manville transite pipe.  GRINNELL, LLC d/b/a GRINNELL CORPORATION has and does business in the State of North Carolina.

13.     Defendant, HAJOCA CORPORATION (sued Individually and as successor-in-interest to HUGHES SUPPLY), was and is a company incorporated under the laws of the State of Maine with its principal place of business in Pennsylvania. At all times material hereto, HAJOCA CORPORATION (sued Individually and as successor-in-interest to HUGHES SUPPLY) was a

5

supplier of asbestos-containing transite pipe. HAJOCA CORPORATION (Sued Individually and as successor-in-interest to HUGHES SUPPLY) has and does business in the State of North Carolina.

14. Defendant, HAMMER & STEEL, INC., was and is a company incorporated under the laws of the State Missouri with its principal place of business in Missouri. At all times material hereto, HAMMER & STEEL, INC. was a supplier of asbestos-containing Delmag diesel pile drivers. HAMMER & STEEL, INC. has and does business in the State of North Carolina.

15. Defendant, HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued Individually and as successor-in-interest to BENDIX CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued Individually and as successor-in-interest to BENDIX CORPORATION) was a manufacturer and supplier of Bendix brakes. HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued Individually and as successor-in-interest to BENDIX CORPORATION) has and does business in the State of North Carolina.

16. Defendant, J-M MANUFACTURING COMPANY, INC. (sued Individually and as parent and alter ego to J-M A/C PIPE CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, J-M MANUFACTURING COMPANY, INC. (sued Individually and as parent and alter ego to J-M A/C PIPE CORPORATION) was a manufacturer and supplier of asbestos-containing transite pipe. J-M MANUFACTURING COMPANY, INC. (sued Individually and as parent and alter ego to J-M A/C PIPE CORPORATION) has and does business in the State of North Carolina.

17. Defendant, KAWASAKI MOTORS CORP. U.S.A., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in California.

6

At all times material hereto, KAWASAKI MOTORS CORP. U.S.A. was a manufacturer and supplier of asbestos-containing friction products. KAWASAKI MOTORS CORP. U.S.A. has and does business in the State of North Carolina.

18.     Defendant, MCWANE INC. (sued Individually and as successor-in-interest to CLOW CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Alabama. At all times material hereto, MCWANE INC. (sued Individually and as successor-in-interest to CLOW CORPORATION) was a manufacturer of Clow valves. MCWANE INC. (sued Individually and as successor-in-interest to CLOW CORPORATION) has and does business in the State of North Carolina.

19.     Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. At all times material hereto, METROPOLITAN LIFE INSURANCE COMPANY was a conspiracy defendant. METROPOLITAN LIFE INSURANCE COMPANY has and does business in the State of North Carolina.

20.     Defendant, PFIZER INC., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, PFIZER INC. was a supplier of asbestos-containing kilinoise and asbestos-containing talc. PFIZER INC. has and does business in the State of North Carolina.

21.     Defendant PNEUMO ABEX LLC (sued individually and as successor-in-interest to ABEX CORPORATION and as successor-in-interest to AMERICAN BRAKEBLOK) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. Pneumo Abex Asbestos Claims Settlement Trust, a resident of Delaware, is the sole member of PNEUMO ABEX LLC (sued individually and as successor-in-interest to ABEX CORPORATION and as successor-in-interest to AMERICAN BRAKEBLOK). At all times

7

material hereto, PNEUMO ABEX LLC (sued individually and as successor-in-interest to ABEX CORPORATION and as successor-in-interest to AMERICAN BRAKEBLOK) was a supplier of asbestos-containing brake linings. PNEUMO ABEX LLC (sued individually and as successor-in-interest to ABEX CORPORATION and as successor-in-interest to AMERICAN BRAKEBLOK) has and does business in the State of North Carolina, including selling its asbestos-containing products in this state.

22.     Defendant, SPECIAL ELECTRIC COMPANY, INC. (sued individually and as alter-ego and successor-in-interest to SPECIAL MATERIALS, INC.-WISCONSIN ), was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin.  At all times material hereto, SPECIAL ELECTRIC COMPANY, INC. (sued individually and as alter-ego and successor-in-interest to SPECIAL MATERIALS, INC.-WISCONSIN) was a supplier of asbestos fibers. SPECIAL ELECTRIC COMPANY, INC. (sued individually and as alter-ego and successor-in-interest to SPECIAL MATERIALS, INC.-WISCONSIN) has and does business in the State of North Carolina.

23.     Defendant, UNION CARBIDE CORPORATION, was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas. At all times material hereto, UNION CARBIDE CORPORATION was a supplier of asbestos fibers. UNION CARBIDE CORPORATION has and does business in the State of North Carolina.

24.     Defendant, YAMAHA MOTOR CORPORATION, U.S.A., was and is a company incorporated under the laws of the State of California with its principal place of business in California. At all times material hereto, YAMAHA MOTOR CORPORATION, U.S.A. was a supplier of asbestos-containing friction products.  YAMAHA MOTOR CORPORATION, U.S.A. has and does business in the State of North Carolina.

8

25.     Plaintiffs Larry Winslowe Lee and Susan Provost Lee bring this action for monetary damages as a result of Plaintiff Larry Winslowe Lee's contraction of an asbestos-related disease. Plaintiff Larry Winslowe Lee was diagnosed with mesothelioma on or about September 13, 2013.

26.     Plaintiff Larry Winslowe Lee was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

(a)     Plaintiff Larry Winslowe Lee was employed as mechanics' helper at the Standard Oil Gas Station in Vero Beach, FL from 1963 to 1964, and as a part-time mechanics' helper at Pure Oil Co. Gas Station in Vero Beach, FL. His job duties at both locations included brake repair and replacement and engine overhauls including removal and replacement of exhaust gaskets on numerous makes and models of cars, light trucks, and farm equipment, including but not limited to Ford Motor Company cars and trucks and John Deere tractors. In the performance of his job duties, Plaintiff Larry Winslowe Lee was exposed to asbestos-containing friction products including, but not limited to, FoMoCo brakes, Rayloc brakes (including brakes manufactured using American Brakeblok (Pneumo Abex) brake linings), Bendix brakes, Victor gaskets, and asbestos-containing friction products supplied by Napa Auto Parts, Ford Motor Company and John Deere.

(b)     Plaintiff Larry Winslowe Lee was employed as a laborer/helper for the State of Florida, Entomology Research Laboratory in approximately 1964. His job duties included grounds and mower maintenance. Specifically, Plaintiff Larry Winslowe Lee performed maintenance work on a Snapper lawn mower, including changing the engine gaskets.

(c)     From approximately 1968 to 1970, Plaintiff Larry Winslowe Lee was employed by

9

the Florida Department of Transportation in Indian River County, FL as an inspector and surveyor. He was also employed as a bridge construction superintendent for the Perini Corporation in Indian River County, FL from approximately 1971 to 1972. His job duties included inspecting the work of contractors in all phases of bridge and road construction. Larry worked in close proximity to large steam pile drivers manufactured by Delmag and supplied by Hammer and Steel, Inc., and would have been exposed to asbestos-containing pads affixed to and removed and replaced on the steam pile drivers.

(d)    Plaintiff Larry Winslowe Lee also experienced exposure to asbestos from approximately 1973 to 1976 while working as head of layout design of road construction and water and sewer lines for a general contractor, Gorham Construction, which installed water and sewer utility piping for private developers and municipalities. Mr. Lee was exposed to the cutting, installation, removal and repair of asbestos-containing pipe including, but not limited to, pipe manufactured by Johns Manville, J-M Manufacturing Company, Certainteed, and Armco and supplied by Hughes Pipe Supply and Grinnell Corporation. Suppliers of asbestos fibers and talc used in Johns-Manville, J-M Manufacturing Company, Certainteed and/or Armco pipe include, but are not limited to, Pfizer, Inc., Special Electric, Co., and Union Carbide.

(e)    Plaintiff Larry Winslowe Lee also experienced exposure to asbestos from approximately 1976 to 1981 and 1985 to present while employed by Davis Water & Waste Supply n/k/a HD Supply and from approximately 1982 to 1985 while employed by Underground Supply as a salesman of water and sewer pipe and piping supplies such as fittings, valves and pipe adapters. His daily job duties placed

10

him on job sites where asbestos-containing pipe including, but not limited to, pipe manufactured by Johns Manville, J-M Manufacturing Company, Certainteed, and Armco and supplied by Hughes Pipe Supply and Grinnell Corporation, was cut for repairs and tie-ins. Suppliers of asbestos fibers and talc used in Johns-Manville, J-M Manufacturing Company, Certainteed and/or Armco pipe include, but are not limited to, Pfizer, Inc., Special Electric, Co., and Union Carbide. Additionally, Mr. Lee was exposed to the removal and replacement of asbestos-containing flange gaskets and valve bonnet packing on valves including, but not limited to, Clow valves.

(f)     Plaintiff Larry Winslowe Lee also experienced exposure to asbestos from approximately the late 1950's through 2000's while performing automotive maintenance work on his personal vehicles and vehicles and motorcycles of family members.   Larry removed and replaced asbestos-containing friction products, including brakes and engine gaskets, on numerous makes and models of cars, including Ford and Corvette.  He purchased parts from Napa Auto Parts stores and Eckler's Corvette.  Additionally, he performed maintenance work, including the removal and replacement of asbestos-containing brakes on Kawasaki and Yamaha motorcycles from approximately 1977 to 1982.

27.     At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said Defendants.

28.     At all material times, the Defendants manufactured, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos and/or asbestos-containing

11

products, materials, or equipment either directly or indirectly to Plaintiff Larry Winslowe Lee or to such other entities so that these materials were caused to be used by or in close proximity to Plaintiff Larry Winslowe Lee.

29.　　At all material times, Defendant Metropolitan Life Insurance Company conspired with other Defendants to disseminate false and misleading medical and/or scientific information regarding the safety of asbestos and demonstrated a clear disregard for the health, safety and welfare of individuals such as Plaintiff Larry Winslowe Lee.

## JURISDICTION AND VENUE

30.　　This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

31.　　Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because Plaintiffs Larry Winslowe Lee and Susan Provost Lee reside in Hillsborough, North Carolina and/or a substantial part of the events or omissions occurred in North Carolina.

32.　　Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because Plaintiffs Larry Winslowe Lee and Susan Provost Lee are citizens of the State of North Carolina and none of the Defendants are citizens of the State of North Carolina. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

33.　　Plaintiffs Larry Winslowe Lee and Susan Provost Lee have satisfied all conditions precedent to the filing of this action.

34.　　All of the named Defendants listed on the caption are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. Each Defendant

12

corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, which are or in the past were sold, distributed, and used in North Carolina.

## FIRST CAUSE OF ACTION
## NEGLIGENCE
**(Against all named Defendants except Metropolitan Life Insurance Company)**

35.     Plaintiffs Larry Winslowe Lee and Susan Provost Lee incorporate by reference the preceding paragraphs as if fully set forth herein.

36.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment.

37.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment came into use by Plaintiff Larry Winslowe Lee.

38.     Throughout the course of his daily life, Plaintiff Larry Winslowe Lee used and was exposed to the asbestos and asbestos-containing materials, products or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of North Carolina.

39.     During the course of his daily life, Plaintiff Larry Winslowe Lee was exposed to Defendants' asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

13

40.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Larry Winslowe Lee and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

41.     Plaintiff Larry Winslowe Lee sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff Larry Winslowe Lee's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff Larry Winslowe Lee's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff Larry Winslowe Lee would not know of such danger to her health.

42.     Plaintiff Larry Winslowe Lee's illness and/or disabilities are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly harmful to Plaintiff Larry Winslowe Lee's body, lungs, respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)     Failed to advise Plaintiff Larry Winslowe Lee of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

14

(b)    Failed or omitted to provide Plaintiff Larry Winslowe Lee with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as she was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c)    Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health from contact with or exposure to said asbestos and asbestos-containing materials, products or equipment;

(d)    Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling said asbestos-containing materials, products or equipment;

(e)    Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff Larry Winslowe Lee of the dangers to their health from contact with and/or breathing said asbestos fibers  from asbestos and/or asbestos-containing materials, products or equipment;

(f)    Failed to develop alternative products;

(g)    Continued to use a known cancer-causing product, to-wit:  asbestos; and

(h)    After discovering that asbestos exposure caused a progressive lung disease, Defendants did not inform Plaintiff Larry Winslowe Lee of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

15

43. Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the Defendants.

44. Defendants were negligent and breached their duty of due care to Plaintiff Larry Winslowe Lee by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff Larry Winslowe Lee and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment at issue in the stream of commerce.

45. The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment and the resulting injuries and damages to Plaintiff Larry Winslowe Lee were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

46. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff Larry Winslowe Lee developed mesothelioma, as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

47. As a result of the above, Plaintiffs Larry Winslowe Lee and Susan Provost Lee seek damages as are hereinafter demanded.


### SECOND CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
**(Against all named Defendants except Metropolitan Life Insurance Company)**

48. Plaintiffs Larry Winslowe Lee and Susan Provost Lee incorporate by reference the preceding paragraphs as if fully set forth herein.

16

49.     The Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

50.     The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff Larry Winslowe Lee lived while in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

51.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff Larry Winslowe Lee developed an illness, to-wit: mesothelioma.

52.     As a result of the above, Plaintiff Larry Winslowe Lee and Susan Provost Lee seek damages as are hereinafter demanded.

**THIRD CAUSE OF ACTION**
**WILLFUL AND WANTON CONDUCT**
**(Against all named Defendants except Metropolitan Life Insurance Company)**

53.     Plaintiffs Larry Winslowe Lee and Susan Provost Lee incorporate by reference the preceding paragraphs as if fully set forth herein.

54.     Plaintiff Larry Winslowe Lee and others in his position worked with and in close proximity to the asbestos and asbestos-related materials used or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff Larry Winslowe Lee's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

55.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, were hazardous to the health and safety of Plaintiff Larry Winslowe Lee and others in

17

the Plaintiff Larry Winslowe Lee's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants. As a result, Plaintiff Larry Winslowe Lee was severely damaged as is set forth below.

56. The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff Larry Winslowe Lee the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure. Specifically, Defendants' intentional, willful, wanton and fraudulent conduct included the following acts and omissions:

(a) failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b) failure to issue recall type letters to prior users;

(c) frustrating the publication of articles and literature from the 1930's through at least 1976;

(d) rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e) delaying the use of and/or providing intentionally inadequate warnings on asbestos products.

57. The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff Larry Winslowe Lee and others similarly situated at a time when each of the Defendants had knowledge,

18

or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment upon the body of human beings, including Plaintiff Larry Winslowe Lee and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff Larry Winslowe Lee and others similarly situated, and Plaintiff Larry Winslowe Lee is thereby entitled to punitive damages.

58.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of the user or consumer, such as Plaintiff Larry Winslowe Lee, Plaintiffs Larry Winslowe Lee and Susan Provost Lee therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of their products.

### FOURTH CAUSE OF ACTION
### FALSE REPRESENTATION/FRAUD
**(Against all Defendants except Metropolitan Life Insurance Company)**

59.     Plaintiff Larry Winslowe Lee incorporates by reference the preceding paragraphs as if fully set forth herein.

60.     During, before, and after Plaintiff Larry Winslowe Lee's exposure to asbestos products manufactured, installed, supplied or otherwise used by Defendants, the Defendants falsely represented facts, including the dangers of asbestos exposure, to Plaintiff Larry Winslowe Lee in the particulars alleged in the paragraphs above, while Defendants each had actual knowledge of said dangers of asbestos exposure to persons such as Plaintiff Larry Winslowe Lee, and while Defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

19

61.     The foregoing representations were material conditions precedent to Plaintiff Larry Winslowe Lee's continued exposure to asbestos-containing products, and Defendants each intended that Plaintiff Larry Winslowe Lee act upon the representations by continuing his exposure to the asbestos products. Plaintiff Larry Winslowe Lee was ignorant of the falsity of Defendants' representations and rightfully relied upon the representations.

62.     As a direct and proximate result of Plaintiff Larry Winslowe Lee's reliance upon Defendants' false representations and fraud, Plaintiff Larry Winslowe Lee suffered injury and damages hereinafter described and seeks recovery for compensatory and punitive damages against these Defendants.

### FIFTH CAUSE OF ACTION
### FAILURE TO WARN
**(Against all named Defendants except Metropolitan Life Insurance Company)**

63.     Plaintiffs Larry Winslowe Lee and Susan Provost Lee incorporate by reference the preceding paragraphs as if fully set forth herein.

64.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and of exposures to inhalable asbestos.

65.     Defendants had a duty to warn individuals including, but not limited to, Plaintiff Larry Winslowe Lee, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

66.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants failed to warn and/or inadequately warned Plaintiff Larry Winslowe Lee of the dangers including, but not limited to:

(a)     Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with their products which should have been designed to provide to

20

Plaintiff Larry Winslowe Lee knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(b)     Failing to provide adequate product inserts, informative brochures, posters, and/or other written materials with their products which should have been designed to provide to Plaintiff Larry Winslowe Lee knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(c)     Failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff Larry Winslowe Lee;

(d)     Failing to recall their defective product or manufacture a reasonably safer alternative;

(e)     Otherwise failing to act reasonably under the totality of the circumstances.

67.     Defendants manufactured, processed and/or sold asbestos and/or asbestos-containing products, materials, or equipment and these products were used by Plaintiff Larry Winslowe Lee.  Thus, Defendants had a duty to warn individuals including, but not limited to, Plaintiff Larry Winslowe Lee, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment.

68.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

21

69. At the time the asbestos and/or asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff Larry Winslowe Lee. In the alternative, after the asbestos-containing products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their products posed a substantial risk of harm to a reasonably foreseeable user, such as Plaintiff Larry Winslowe Lee, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

70. Defendants' failure to provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment caused Plaintiff Larry Winslowe Lee to develop mesothelioma as a consequence of which he was injured and damaged, and Plaintiff Larry Winslowe Lee hereby makes a claim for damages from the Defendants jointly and severally.

71. As a result of the Defendants' failure to warn, Plaintiff Larry Winslowe Lee suffered the injuries, illnesses, and/or damages hereinafter alleged.

### SIXTH CAUSE OF ACTION
### CONSPIRACY AND PUNITIVE DAMAGES
#### (Against Metropolitan Life Insurance Company Only)

72. Defendant METROPOLITAN LIFE INSURANCE COMPANY (hereinafter "Metropolitan Life") rendered substantial aid and assistance to the manufacturers of asbestos-containing products to which Plaintiff Larry Winslowe Lee was exposed, and such assistance by METROPOLITAN LIFE aided and abetted the negligence and the marketing of unreasonably

dangerous asbestos-containing products by such manufacturers which proximately caused Plaintiff Larry Winslowe Lee's illness, injuries, and/or disabilities.

73.     In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

74.     Plaintiff Larry Winslowe Lee unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE's tests and information dissemination, the results of which METROPOLITAN LIFE published in leading medical journals.

75.     As a direct and proximate contributing result of METROPOLITAN LIFE's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Larry Winslowe Lee from asbestos exposure was increased, and (ii) Plaintiff suffered the injuries previously described.

76.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Larry Winslowe Lee. Plaintiff Larry Winslowe Lee seeks compensatory and punitive damages against METROPOLITAN LIFE as a result.

## SEVENTH CAUSE OF ACTION
## CONSPIRACY AND PUNITIVE DAMAGES
**(Against Formosa Plastics Corporation U.S.A. (sued individually and as parent, alter ego and successor-in-interest to J-M Manufacturing Company and to J-M A/C Pipe Corporation) and J-M Manufacturing Company (sued individually and as parent and alter ego to J-M A/C Pipe Corporation)**

77.     Defendants **FORMOSA PLASTICS CORPORATION U.S.A** (sued individually and as parent, alter ego and successor-in-interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION) rendered substantial aid and assistance to the manufacturers and sellers of asbestos containing products manufactured by **J-M A/C PIPE CORPORATION** and designed, distributed and sold by **J-M MANUFACTURING COMPANY**(sued individually and as parent and alter ego to J-M A/C PIPE CORPORATION) and abetted the negligent manufacture and sale of those asbestos products which proximately caused Larry Winslowe Lee's illness, injuries and disabilities.

78.     **FORMOSA PLASTICS CORPORATION U.S.A** (sued individually and as parent, alter ego and successor-in-interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION) negligently supported, funded, oversaw and encouraged the manufacture and sale of asbestos containing products by **J-M A/C PIPE CORPORATION** and **J-M MANUFACTURING COMPANY** (sued individually and as parent and alter ego to J-M A/C PIPE CORPORATION) with knowledge that such products were defective and dangerous. **FORMOSA PLASTICS CORPORATION U.S.A** (sued individually and as parent, alter ego and successor-in-interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION) negligently supported, funded, oversaw and encouraged the manufacture and sale of asbestos containing products by **J-M A/C PIPE CORPORATION** and **J-M MANUFACTURING COMPANY** (sued individually and as parent and alter ego to J-M A/C PIPE CORPORATION) with knowledge that a viable safer alternative product was available an already being manufactured and sold by **J-M MANUFACTURING COMPANY** (sued individually and as parent and alter ego to J-M A/C PIPE CORPORATION).

24

## EIGHTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

79. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

80. Plaintiffs Larry Winslowe Lee and Susan Provost Lee were married on January 10, 1965, and at all times relevant to this action were, and are now, husband and wife.

81. Prior to Plaintiff Larry Winslowe Lee's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Plaintiff Larry Winslowe Lee has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future.

82. As a direct and proximate result of the injuries and damages complained of herein with respect to Plaintiff Larry Winslowe Lee and as a direct and proximate result of the acts and omissions of the defendants, Plaintiff-spouse Susan Provost Lee has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband; and therefore Plaintiff-spouse Susan Provost Lee is entitled to damages for her loss of consortium, both past and future.

## DAMAGES
## COMPENSATORY AND PUNITIVE DAMAGES

83. Plaintiffs Larry Winslowe Lee and Susan Provost Lee incorporate by reference the preceding paragraphs as if fully set forth herein.

84. As a result of the above-alleged conduct of the Defendants, Plaintiff Larry Winslowe Lee developed mesothelioma, as a consequence of which, he has been damaged as follows:

      (a)      hospital and medical expenses incidental to Plaintiff Larry Winslowe Lee's illness;

(b)    loss of earnings and future earning power of Plaintiff Larry Winslowe Lee;

(c)    loss of Plaintiff Larry Winslowe Lee's general health, strength, and vitality;

(d)    loss of pecuniary contributions to Plaintiff Susan Provost Lee;

(e)    loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Susan Provost Lee;

(f)    future loss of consortium, society, aid, companionship and services to Plaintiff Susan Provost Lee;

(g)    pain and suffering of Plaintiff Larry Winslowe Lee;

(h)    all other damages recoverable under said Act.

WHEREFORE, Plaintiffs Larry Winslowe Lee and Susan Provost Lee verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy and other breaches of duty and willful, wanton, fraudulent and malicious conduct as alleged herein proximately caused by the fault of the Defendants. Plaintiffs Larry Winslowe Lee and Susan Provost Lee pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000, plus interest as provided by law and the costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 2nd day of December, 2013.

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiffs
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
jwblack@wardblacklaw.com